Insurance Company. We will hear from the appellant, Mr. Anspach. Good morning, your honors. May it please the court. Defendant State Auto issued a policy of homeowner's insurance to the plaintiff, Shanice Currie. And during the term of that policy, which was from September 15 of 2018, for one year, there was a fire. Defendant denied coverage for the fire. The issue in this case is whether the plaintiff resided at the property, which is referred to as the 10th Street property, at the inception date of the policy. That term is set forth in the residence premises definition of the policy, which states that residence premises means the two, three, or four family dwelling where you reside in at least one of the family units on the inception date of the policy. The defendant asserts that the fire was not covered because plaintiff did not prove residency under the terms of the policy. It's undisputed that that policy, since it was issued in the state of Wisconsin, must be determined under, construed under Wisconsin law. And under Erie Railroad v. Tompkins, a federal court sitting in Wisconsin must decide the terms of the policy, including residence and reside, under the law of Wisconsin as determined by its legislature and its enactments or by the highest court of the state in a decision. The Wisconsin Supreme Court has long held that residence is determined by mere physical presence and intention. In Washura County v. Calumet County, the Wisconsin Supreme Court held that, quote, residence is established by the concurrence of intention and personal presence, and that, quote, continuous personal presence thereafter is not essential to a continuous residence. That holding was affirmed by the Wisconsin Supreme Court in Milwaukee County v. State Department of Public Welfare, where the Supreme Court again held. There were concerns about those cases. They were construing residence as it appeared in various statutory provisions. Is that correct? Correct. How useful are cases that address or define terms in the statutory context when a particular statute has a particular purpose that may have other context? Why do you think we should import those definitions into the insurance context, which is basically a breach of contract case? That's an excellent question, Your Honor. However, there are no cases decided by the Supreme Court of Wisconsin, or for that matter, an appellate court in Wisconsin, construing this provision in this policy. In fact, I don't believe there are any construing residence or reside in an insurance policy. But there are Wisconsin cases, actually many of them, about the way one interprets insurance policies more generally. Every state has its own law on that. And the district court looked to those cases, giving Folkman v. Kwame, for example. You've got to give the language its common ordinary meaning, what the reasonable person in the position of the insured would have understood the words to mean. And if there's an ambiguity, if after you've done that, you're left with an ambiguity, then there's the contra pro forentum rule. But you don't get there right away. And so the district court judge says that he needs to give this term residence its common ordinary meaning. That's under Wisconsin law. And he then says a reasonable person would understand, quote, the dwelling where you reside, close quote, to mean the place where the insured actually lives. And he recognizes that it doesn't have to be the sole or primary residence. That's one of your points. The fact that she's got some other apartments isn't dispositive. But he says a reasonable person would nevertheless understand the clause to require her to maintain and use the 10th Street property as a home, even if it was only one residence among many. And then with that idea in mind, he looks at the undisputed facts. And he says it doesn't qualify as a home there. Most people don't have homes with no running water. Most people don't have homes with no door in the front. It goes through the whole thing. I'm sure you know it all. But I don't see the legal error in Judge Edelman's approach to the construction of what, as Judge Lee said, is fundamentally a contract. You're trying to figure out what did these two contracting parties decide to do? What was the insurance company? What risk was it undertaking? Obviously, a risk for property in which somebody resides is different from a risk where the person is never there or is not residing. Usually, there's a different schedule of fees for commercial property and so on. So I just don't see where he's wrong to say, let's look at this common sense interpretation. And the common sense interpretation isn't something where property like this that you're just in two or three days a month would be covered. Well, who's to say that Judge Edelman's common sense interpretation is different than your common sense or my common sense interpretation? Well, the Wisconsin courts were the ones who picked that test, who would pick the test, what is the reasonable person? That's an objective test. In the position of the insured, what would this reasonable person have understood? And so you would do what Judge Edelman did. You would look at things that are as comparable as you can. That's the common law. I beg to differ, Your Honor. You correctly stated the standard, obviously, that the district court was required, once the district court said the term reside was ambiguous, it was required to look at what a reasonable person Actually, he doesn't say it's ambiguous. He says it's not defined in the policy. And then he says, I have to give it its common ordinary meaning and interpret it as a reasonable person would. So he doesn't get to ambiguity. He just says it's an undefined term, which is a different point. Your Honor, page four of his decision, the top paragraph, plaintiff argues that the quote, the dwelling where you reside, unquote, is ambiguous. As to whether it needs sole or primary. And so he resolves that in favor of the insured. He says it's okay for it to be only one residence among many. So he goes with the viewpoint that the insured wants on that one issue. Okay. And he says the clause is ambiguous. About as to whether it need be the insured's sole or primary residence. I don't think you can put a period after the word ambiguous without the rest of the sentence. Well, okay. Here's our position. Regardless of whether the term is ambiguous or not. The decision of the district court is correct insofar as he says we need to look at what a reasonable person standing in the shoes of the insured, how he would view what the term reside means. And I would submit, Your Honor, that a reasonable person standing in the shoes of the insured would determine that the term reside means identically what the Wisconsin Supreme Court decided it means in the Weshura County and the Milwaukee County cases. And in those cases, the Wisconsin Supreme Court very definitively said all that was required is physical presence plus intention to remain. One night and one intention. That's really what you think the Wisconsin courts think? That's what they said. And the enactments of the state legislature are 100% adoptive of that language. Now, Your Honor, Your Honor points to what I think is kind of what you might think is an absurd result. Only one day. We're only looking at one moment in time. Is that all that's required? That the plaintiff only be there on one day? The answer is yes. And why is that? It's because that is how the defendant drafted the policy. But, Mr. Pemperin, I mean, Mr. Ansbach, in the Pemperin case, Pemperin versus Milwaukee Mutual Insurance, the Wisconsin Supreme Court seems to draw a distinction between how one would view the term resident as it appears in insurance policy versus how that term might be defined in the statutory context. I think the quote is something like, the word is an elastic term, which may refer to a temporary sojourner as well as one possessing a legal domicile. So I guess I'm still not convinced that we should put so much weight on cases where the Wisconsin courts have interpreted the term resident, residency, what have you, in the statutory context versus, as Judge Woods noted, the insurance contract context. You seem to be relying heavily on cases where the courts are interpreting the term reside or resident in the context of various statutes. As does the defendant, Your Honor. That is true, as does the defendant. But since we're able to do our own independent analysis of these issues, it seems to me that of those two categories of cases, that it would be more prudent to look at the cases where Wisconsin courts have actually viewed, construed the term in the context of insurance contracts versus various statutes. Have they construed, Your Honor, though, the term reside in conjunction with... But they've construed terms like resident, right, or like the provisions in insurance contracts where they say a covered individual would be a family member who resides with the insured policyholder. They've interpreted the word reside, resident, in the context of insurance cases, perhaps not in this particular provision, but in related provisions. Okay. All right. I give you that, Your Honor. I'm not familiar with the particular case that you quoted, but... There's one, Welter v. Singer, 126 West 2nd, 242, and the definition given is to dwell permanently or continuously, expressing the idea that a person keeps or returns to a particular dwelling place as a fixed, settled, or legal abode, reside permanently or continuously. I would say, Your Honor, respectfully to all of Your Honors, that those cases don't apply because while they may have defined the term reside or residence in terms of continuous presence, this policy doesn't require continuous presence. This policy says that where you reside must be determined at a particular moment in time. I didn't draft the language of this policy, but they did, and that's how they drafted it. They have to live by it. Your Honors, the district court is not free to introduce terms that are foreign to the policy. But, Counselor, I'm not sure whether the district court did that. I mean, I think the timing of when that determination is made is a question that is distinct from whether or not someone lives at a place on a continuing basis. So, for example, you can see why the insurance contract might designate the beginning of the policy versus, say, 60 days after the expiration of the policy as the time to make that determination of whether someone has, if that's a term of continuing intention or continuing presence at that facility.  Your Honor, I'm saying that at that particular point in time, by her expression of intention to be there and to remain, and by the fact that she was physically present, she resided there at that point in time. Is there any evidence in the record as of September 15, 2018, the house was habitable? That, I don't know. And, again, that's a term foreign to the policy, Your Honor. Thank you, Counsel. Okay. Thank you. All right. We will now hear from the appellee, Mr. Pickleberg. Thank you, Your Honors. May it please the court, the court staff, opposing counsel. Your Honors, I think that the court has aptly pointed out the concerns and the issues that we've raised in our brief. I respectfully disagree with counsel in his interpretation of the Washoe County case. In that case, the court is looking at residency prospectively. The court is saying or looking to establish that the person was, in fact, residing at the property. Once it is established that they live at that property and the intention to continue to live at that property, then you can establish residence. What counsel is saying is state auto is taking one moment in time, and that's when residency is adopted. No. The policy says you must be residing at the property. It must be a residence premises at the time of policy inception. Not one day, but at some point prior to the policy inception, you must show that you were using the property as a residence. There is nothing in the record to establish that. The case that counsel cites, even if one accepts the intent factor, the intent at issue here pertains to what was intended to remain one's already established fixed place of residence. I would also respectfully note that. But doesn't Ms. Curry talk about the fact that she intended to be there? This is the only property that she owns. She goes there maybe a couple nights a month, but repeatedly over time, just not isolated. She has furniture there, albeit in one room. She might not carry all the functions of a resident there in that house, but that's kind of her intent. Again, intention is all well and good, but it is not a factor after the fact. What I intend to do tomorrow or the next day or the next day or the next day is irrelevant. What is important is what were my actions and what were my activities at the time that the policy went into effect. I would point out that Ms. Curry did testify that she was only using the property randomly. In her examination of her oath transcript, I asked her, how often would you stay at the house? Not, I wouldn't say, because I was still getting things together. So it was random. Random times. I don't. How often, just random. So once in a while you were there? Yes. So there is no showing that she was there on a continual basis, on a regular basis, that she was using it to live, to eat, although she said she brought food in, to sleep, to bathe, to use the facilities to have heat, to have hot water, to have any of the means that one would associate with a resident's premises. She doesn't even know if there was a door behind the panel that had to be So intent in the future is fine, but it was the intent and the showing of evidence prior to the inception of the policy that shows that she was actually using the property as her residence. I mean, I think the key where Judge Edelman really brought it home was she knew that there were people living in the house who didn't belong there. There were squatters living in her house, and she never called the police, she never did anything. That does not show an intent to be residing in this property. I'm not sure I'd put a huge weight on that. I think what she's saying is that you could have written a policy that had said this policy is a residential homeowner's policy, and at such times as this is no longer your residence, you have a duty to notify the insurance company, and there might be an adjustment of rates or something of the sort. But it seems to have this focus on just the day of the inception of the policy. But it's talking about the fact that you must be residing there, not having an intent. Right. So what if you leave the next day? You were residing there, let's counterfactual. I know this is not the facts, but suppose she'd been living there for the full month before the policy took effect, and she's still living there in the day, the policy. I don't know what she's doing. She's getting takeout food, Uber Eats, whatever she does. And then she goes back to the daycare residence, or she goes back to the Moderne apartment, and she just pops in now and then to see how things are going, with maybe the hope that eventually it will be habitable. That's still not a residence, Your Honor. Well, but it was the day the policy started. That's her point. If she'd been living there for a whole month before the policy starts, and she's still living there on that day, and then the next day she leaves. But we go back to the definition of what is reside. And I would point out that as recently as February of this year, the Wisconsin District Court, the Eastern District District Court, interpreting Georgia Law, which I will grant you is not the same as Wisconsin, but they do have similar rules of construction, looking at a residence premises case, adopted the definition that we have asserted, which is the policy, the term established meaning, according to Marion Webster, reside means to dwell permanently or continuously, occupy a place as one's legal domicile. And so what do you mean by continuous? Suppose she had this place where she stayed during the week, and she has another place where she goes for the weekends, Friday and Saturday night, a nice place in Door County or whatever, some additional place. Well, I agree with you that as Judge Adelman noted, someone can have more than one residence. But that residence has to be habitable. It has to be a place. It has to be a place where you can sojourn, where you can stay, where you have the means to live, not just lie in a bed and not have a bathroom, not have an oven, a stove, a kitchen, a refrigerator, bath facilities. It has to be a habitable place of abode. And there's nothing in the record to establish that this was a habitable place of abode. How would you propose that we determine whether or not an abode is habitable? How would you articulate that test? Well, I think that the issues that were raised by Judge Adelman and as we presented to Judge Adelman, which would be what I've just said, and I don't want to continue to repeat to the court what I've said, but I think the very basic essence of the fact that let's start with— unfortunately, there are lots of people in Chicago that live without heat in the wintertime. So would you say that all those people don't live where they live? No. Right, and so I'm asking you if there is some sort of—to articulate some sort of test or list of factors or what have you that you would propose that we consider to determine whether or not a particular place is habitable. I would argue—I would assert, Your Honor, that yes, there are many people who live without heat, and they do so unwillingly or because they cannot afford to. In this particular instance, Ms. Curry didn't even know if she had heat. She didn't know if her furnace was working or her hot water heater was working. So I think some of the factors that have to be taken into consideration in this case is what did Ms. Curry know about her own property? She didn't know if the hot water tank was working. She didn't know if the furnace was working. She didn't know if the electrical initially was working, but then all of a sudden the lights worked. So, I mean, in many cases where someone is living someplace where they don't have heat, they know they don't have heat, and they have to live with that fact, whether it's because they can't pay their bills or because their heat is off for some reason. But in this particular case, there is no evidence in the record as to what Ms. Curry knew was working and not working. So how can you claim habitability of a property when you can't even identify what in fact was or was not working? And that's why I think the factors that we've attributed in this case go to a point that suggests she was not using it as a residence. Whatever her intention was in the future, she was staying there to make sure probably that the squatters didn't stay there all the time. But she wasn't using it as a place of abode. She didn't have a lock on the door. So do we look to dictionaries? I mean, I'm trying to think. Judge Pryor suggested some things that courts have looked at. Do you say that the concept of residence has a certain aura of permanency to it, even if not every day, but constant? One would need to come up with a definition. Courts do sometimes look at dictionaries. Well, in this case, courts should be looking at dictionaries. The construction of the statutes that counsel wants you to look at are completely unrelated. It's the insurance commissioner who is vested with the power to issue policies, to order their revision, to order terms to be added. The insurance code is the code that guides the issuance of insurance policies. But we also need to follow the methodology that the Wisconsin courts would follow. This is not our playground. It's their law. We need to follow what they do. Right, and so they say look at the construction that a reasonable person would have. What reasonable person would be looking at statutory definitions? They'd be looking at the dictionary, just as Judge Adelman did. Just as other courts in Wisconsin do. They look at the common ordinary definition of the word reside, which is what I was pointing out to in this Mountry case, which is 2023 Westlaw 201-9342. There the court again looked at the common definition and said this is what it means. It's not ambiguous. It means to dwell permanently or continuously. Where is the permanence or continuous prior to the inception date of the policy? Are there cases on the other side of the coin, like discussing whether a single night at a hotel means reside or visiting a friend means reside? I'm trying to think of hypotheticals where you would have non-permanent occupancy. I have to apologize to the court. I am sure that there are. I believe that one of the cases the plaintiff cites, I don't remember which one addressed some of those issues. I think that the courts have ruled that staying in a hotel for one or two nights or staying at a friend's house one or two nights is not residence. It's a temporary stay away from your property. If, for example, when I was a young child, my parents moved to another state and we were there in a hotel for six weeks, I might argue that was a residence for purposes of our stay because we were there or needed to be there for a permanent period of time. I could see that arguably being a residence or one staying in a hotel from month to month to month. That would be the residence. But being at a hotel for one or two nights like I did last night, it's not my residence. I can see that point. Staying at my friend's house, if I were to go to see someone here in Chicago who I knew, that would not be a residence. That's not living in a home, residing at a place of a vote for any long period of time. Judge Lee, you look like you had a question. Does the court have any other questions? Thank you. Then I thank you for your time. Mr. Honpak, I'll give you a minute for rebuttal. All right. I would assert that looking at a case, two cases, Washura County and Milwaukee County, they construe statutes and the meaning of the word residence within those statutes are appropriate here because this policy, as I said on page 14 of my reply brief, contains a provision which says conformity to statute or rule. Any provision of this policy, including endorsements, which modify the policy, which we have here, that is in conflict with the Wisconsin statute or rule is hereby amended to conform to that statute or rule. This company, State Auto, is deemed to have known what the statutes and decisional law of this state was when it drafted this policy. When there's decisional law of this state, which says physical presence plus intention establishes residency, the policy has to be construed in accordance with those decisions. One other point I wish to make, Your Honors, and that is there is a decision, Your Honor, which talks about non-permanence, non-permanence resident, and that is the Thorn case, which this court decided. Now, this court said in that case Thorn's physical presence plus his subjective intent to reside there was all that was required, and it was a situation where he was there. How's the Indiana case, though? It was, Your Honor, although the decision in this regard doesn't place itself under Indiana law. But, yes, arguably it was. But then I think this court has an obligation to look and see, well, what is the difference between Indiana law and Wisconsin law on this matter? And on this matter, there is no difference whatsoever. Thank you, Mr. Antos. Thank you. The case will be taken under advisement.